IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-00134-MSK-CBS

PATRICIA LYNN SCHMALTZ,

        Plaintiff,

v.

BONNIE ROESINK, and
ARISTEDES ZAVARAS,

        Defendants.

---

**OPINION AND ORDER GRANTING DEFENDANT ROESINK'S MOTION TO
DISMISS AND DENYING DEFENDANT ZAVARAS' MOTION TO DISMISS**

---

**THIS MATTER** comes before the Court pursuant to Defendant Zavaras' Motion to Dismiss **(# 23)**, the Plaintiff's response **(# 26)**, Defendant Zavaras' reply **(# 30)**, and the Plaintiff's sur-reply **(# 33)**; Defendant Roesink's Motion to Dismiss **(#25)**, the Plaintiff's response **(# 27)**, Defendant Roesink's reply **(# 31)**, and the Plaintiff's sur-reply **(# 32)**.[1] In addition, the Plaintiff appears to have filed Objections **(# 9, 34)** pursuant to Fed. R. Civ. P. 72(a) to certain orders issued by the Magistrate Judge.

## FACTS

The Plaintiff commenced this action *pro se* on January 22, 2008. Her 30-page Complaint **(# 2)**, which is augmented by more than 180 pages of various exhibits, is repetitive, temporally

---

[1] The Plaintiff did not obtain authorization to file sur-replies. Nevertheless, given her *pro se* status and in the interests of being fully apprised of the Plaintiff's position, the Court has considered the arguments therein.

1

jumbled, and occasionally incomprehensible. Nevertheless, as best as the Court can determine, the Plaintiff complains primarily about events that began in May 2002, when a lienholder commenced foreclosure proceedings against the Plaintiff's business in Grand County, Colorado.

The Plaintiff contends that the ensuing foreclosure sale was procedurally invalid, and consequently, she sought to file an "invoice" with the Grand County Clerk against the Public Trustee who conducted the invalid sale. The Clerk refused to file the Plaintiff's document. Although the circumstances of the encounter with the Clerk are not described in the Plaintiff's Complaint, the incident led to the Plaintiff (and, apparently, her husband) being criminally charged with "hampering government operations" and/or "filing spurious liens on public officials." By this point, the Plaintiff and her husband had moved out of Colorado, and thus, a warrant was issued on the criminal charges by Judge Hoak of the Colorado District Court for Grand County.

In May 2004, the Plaintiff and her husband were stopped for a traffic violation, and a warrant check revealed the existence of the Grand County warrant for the Plaintiff's arrest. The Plaintiff, and apparently her husband, were taken into custody. The Plaintiff eventually pled guilty to charges of "interfering with government operations" and "offering a false instrument for recording," although she now contends that her plea was involuntary and entered only out of fear that her husband was receiving inadequate medical treatment while detained. The Plaintiff apparently received a deferred or probationary sentence, but was placed under an order restraining her from having contact with certain officials of Grand County.

At some point in or about July 2006, Defendant Roesink, the District Attorney for Grand County, sought to revoke the Plaintiff's probation for allegedly violating the no-contact order.

2

The circumstances allegedly giving rise to this request are not set forth in the Complaint; the Plaintiff alleges only that she moved from New Mexico to Montana in 2006. Presumably, Defendant Roesink's request was granted and a warrant issued for the Plaintiff's arrest. The Plaintiff was apparently taken into custody by Montana officials on August 18, 2006. On or about October 11, 2006, the Plaintiff was transferred from Montana to Colorado, presumably to answer the allegations that she had violated the terms of her probation and/or the no-contact order. The Plaintiff alleges that on October 26, 2006, Judge Hoak dismissed the probation violation charges, yet the Plaintiff remained detained. This allegation is in some conflict with her assertion that on December 5, 2006, Judge Hoak sentenced her to 3 years in prison for having improper contact with a Grand County official. The Plaintiff was then remitted to the custody of the Colorado Department of Corrections. She contends that she had "only 2 points" and was thus suited for assignment to "level I security" she was assigned to the Brush Correctional Facility, a medium security institution.

Overlaid atop these core facts, the Plaintiff asserts a variety of federal and state constitutional and statutory claims of varying degrees of comprehensibility. For purposes of illustration, the Court enumerates some, but by no means all, of the theories upon which the Plaintiff asserts claims: (i) Judge Hoak lacked judicial power to issue the original warrant, as she never properly swore the judicial oath of office; (ii) Defendant Roesink conspired with various Montana officials to have the Plaintiff arrested on an invalid warrant; (iii) Defendant Roesink and the Montana officials committed "peonage" by continuing to detain the Plaintiff after she made bail; (iv) Defendant Roesink conspired with Grand County Sheriff's officials to "kidnap" the Plaintiff from Montana and return her to Colorado; (v) Defendant Roesink lacked probable

cause to issue the charges in 2006; (vi) Defendant Roesink allowed excessive bail to be set once the Plaintiff arrived in Colorado; (vii) Defendant Roesink failed to respond to the Plaintiff's "Subject Matter Jurisdiction Challenge," and because "silence is acquiescence," Defendant Roesink "defaulted" on the charges against the Plaintiff; (viii) Defendant Roesink deprived the Plaintiff of her Confrontation Clause rights by calling the Grand County Sheriff as a witness, even though the Sheriff had not received any documents from the Plaintiff, and further, that the Sheriff, as a public servant, is not a "natural person" and thus cannot appear as a witness; (ix) Defendant Roesink again "defaulted" when the Plaintiff sent a "Motion to Release" herself after Judge Hoak allegedly dismissed the charges, and yet the Plaintiff remained incarcerated; (x) the conviction of the Plaintiff on the 2006 charges constituted impermissible Double Jeopardy; (xi) Defendant Roesink, among others, "sold the dismissed misdemeanor case . . . to Fidelity Fund, . . . selling Plaintiff into bondage and slavery" and violating the Truth In lending Act by not informing the Plaintiff of her "three day right of recision for being used as collateral for a 'mortgage backed security'"[2]; (xi) a set of incomprehensible assertions relating to Defendant Roesink conspiring with the Grand County Auditor to refuse to return funds to the Plaintiff based on certain filings in the State of Minnesota, along with numerous allegations based on Defendant Roesink conspiring with others to "sell" the Plaintiff's criminal cases to Fidelity Investment Funds; (xii) a claim that Defendant Roesink conspired with certain Grand County officials to commit "misprision of felony" by intercepting a letter the Plaintiff sought to mail to

---

[2]The Court understands this perplexing allegation to reflect the Plaintiff's belief that she was incarcerated due to the 2002 foreclosure on her business – that is, that her personal liberty was treated as collateral for the loan to the business, and thereafter revoked as part of the foreclosure.

the Grand County Manager; (xiii) Defendant Roesink lacked sufficient evidence to prove the charges that the Plaintiff improperly contacted Grand County officials in violation of the no-contact order; (xiv) Defendant Roesink conspired with Judge Hoak to dismiss a civil suit filed by the Plaintiff against another individual; (xv) Defendant Zavaras, as head of the Colorado Department of Corrections, violated various federal and state constitutional provisions and statutes by assigning the Plaintiff to a medium-security correctional facility instead of a minimum-security one; (xvi) that Defendant Zavaras has not sworn an oath of office, and thus, the Colorado Department of Corrections is a private corporation, not a state agency; and (xvii) Defendant Zavaras has "committed grand larceny and theft by taking Plaintiff's monthly Social Security Annuity payments." Among the items of relief requested by the Plaintiff are compensation for "477+ days of incarceration @ $1500 per day" and "immediate release and exoneration of all charges in any and all cases related to" a number of criminal case numbers.

The Defendants have each moved to dismiss the claims against them. The Court will discuss the arguments raised in each motion below.

## ANALYSIS

**A. Standard of review**

In considering the Plaintiff's filings, the Court is mindful of her *pro se* status, and accordingly, reads her pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in the Plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve the Plaintiff of the duty to comply with the various rules and procedures governing litigants and counsel or the

requirements of the substantive law, and in these regards, the Court will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

### B. Defendant Zavaras' motion

Defendant Zavaras' motion **(# 25)** is limited to a single procedural argument. Specifically, Defendant Zavaras argues that by Order **(# 1)** dated January 22, 2008, the Magistrate Judge found that the Plaintiff had: (i) failed to either pay the filing fee or submit an application to proceed *in forma pauperis*; and (ii) that the Complaint was not submitted on the proper form. That Order directed that the Plaintiff cure the deficiencies within 30 days. The Plaintiff subsequently cured the first defect by paying the filing fee **(# 4)**; she did not, however, amend the Complaint. Defendant Zavaras then sought additional time to answer **(# 6)** the Complaint. By Order dated February 29, 2008, the Magistrate Judge denied Defendant Zavaras' motion as moot, explaining that the Plaintiff had yet to comply with the January 22, 2008 Order. The Magistrate Judge noted that the Plaintiff's Complaint was filed on the "Prisoner Complaint" form, but that the Plaintiff was not actually incarcerated (the Magistrate Judge found that she was "subject to Intensive Supervisory Parole"). Thus, the Magistrate Judge granted the Plaintiff an additional 15 days to comply with the directive that she amend her Complaint by using the proper form, barring which, "the action will be dismissed without further notice." Defendant Zavaras' instant motion points out that the Plaintiff still has not amended her Complaint, and thus, the case should be dismissed pursuant to the Magistrate Judge's February 29, 2008 Order.

The Plaintiff responds to Defendant Zavaras' Order (and, in practically identical terms, files untimely Objections to the Magistrate Judge's February 29, 2008 Order under Fed. R. Civ. P. 72(a)), raising a number of arguments including: (i) the Magistrate Judge is "a commissioner [and] cannot issue a minute order, only a recommendation"; (ii) that the Magistrate Judge's order somehow contravened the Supreme Court's "liberally construed" standard; (iii) that her husband use the same complaint form, without objection, despite being on parole; (iv) that the Plaintiff is under a form of arrest, making the prisoner complaint the appropriate form; and (v) the February 29, 2008 Minute Order was later vacated by the Magistrate Judge; and (vi) various additional arguments that do not warrant further discussion.

The Court finds no particular merit in any of the Plaintiff's arguments, save one. The Plaintiff is correct that on March 10, 2008, the Magistrate Judge vacated (**# 10**) the February 29, 2008 Minute Order.[3] Although the March 10, 2008 vacatur did not do so explicitly, the only reasonable inference to be drawn from it is that it also vacated that portion of the January 22, 2008 order that directed the Plaintiff to file an Amended Complaint. In any event, the Court is not ultimately convinced that the finding that the Plaintiff used the wrong form or the question of whether she is a "prisoner" or not are ones that warrant a motion to dismiss by the opposing party. It is clear that, at least with regard to Defendant Zavaras, the Plaintiff's claims arise from actions that occurred when she was indeed a prisoner in the custody of Defendant Zavaras, and Defendant Zavaras does not complain that Plaintiff's use of a form reserved for prisoner

---

[3]Curiously, Defendant Zavaras' initial motion makes no mention of the vacatur of the Minute Order he primarily relies upon, and his reply does not address that portion of the Plaintiff's response that contends that the Minute Order was vacated. In light of the vacatur, the Court finds Defendant Zavaras' motion borders on sanctionable.

complaints somehow prejudiced his ability to respond to the allegations. Absent a showing that he was somehow prejudiced by the use of an incorrect pleading form, the Court finds no merit in Defendant Zavaras' motion to dismiss, and that motion is therefore denied.

### C. Defendant Roesink's motion

Defendant Roesink moves to dismiss **(# 27)** the Complaint based on a variety of substantive arguments: (i) most of the claims are barred by a 2-year statute of limitations; (ii) the claims are an improper collateral attack on her conviction; (iii) Defendant Roesink is entitled to absolute prosecutorial immunity; (iv) Defendant Roesink is entitled to qualified immunity; and (v) the Complaint fails to adequately allege Defendant Roesink's personal participation.

The Court finds the most merit in Defendant Roesink's second argument: that most of the Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, a prisoner commenced an action against the prosecutor on his criminal case, among others, alleging that the prosecutor secured the conviction by means of a variety of unconstitutional and illegal acts. The inmate sought money damages for his allegedly unlawful incarceration. The Supreme Court started with the well-settled principle that a person who challenges the fact (or duration) of his confinement and seeks speedier release is required to proceed by means of a *habeas corpus* petition. 512 U.S. at 481, *citing Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973). The Court then proceeded to consider the question of whether a claim for monetary damages that implicitly challenges the legality of the plaintiff's confinement is cognizable. It concluded that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal [or

8

otherwise vacated]." *Id.* at 486-87. Thus, the Court is required to consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed. *Id.* at 487.

Here, a great many of the claims the Court ascertains from the Complaint necessarily imply the invalidity of the Plaintiff's conviction. Without attempting to separate out each individual strand of argument, the Court notes that Plaintiff contends that her guilty plea in 2004 improperly accepted for various reasons (*e.g.* that it was coerced by her husband's medical problems; that it was not supported by sufficient facts to show an actual violation of the law) and that her 2006 conviction for violating the terms of her probation was unjustified for various reasons (*e.g.* that she had not been apprised of the probation terms allegedly violated; that she had not engaged in acts that violated the terms; that there was insufficient proof of a violation, etc.). Any argument that seeks relief based on the fact that the Plaintiff was adjudged guilty of these violations and sentenced to some form of custodial punishment necessarily attacks the validity of these convictions. Thus, any claim by the Plaintiff for damages based on these convictions is barred by *Heck*.

Arguably, claims related to the Plaintiff's arrest and detention in Montana, or claims relating to the circumstances of her extradition to Colorado, do not necessarily implicate the fact of her ultimate conviction. *See Laurino v. Tate*, 220 F.3d 1213, 1217 (10th Cir. 2000). A person might successfully challenge the lack of probable cause supporting his or her arrest without necessarily implying the unlawfulness of a conviction on the underlying offense. *Id.* However, to the extent the Plaintiff asserts that Defendant Roesink improperly commenced probation violation proceedings, obtained a warrant for the Plaintiff's arrest, and arranged the Plaintiff's

9

extradition from Montana, Defendant Roesink's actions are protected by absolute prosecutorial immunity.

The Supreme Court has long recognized that prosecutors must enjoy absolute immunity from civil suit for decisions that they make with regard to initiating and pursuing criminal charges. *Imbler v. Pacthman*, 424 U.S. 409, 431 (1976). This doctrine recognizes the competing interests of, on the one hand, defendants who allege that the prosecutor has engaged in unconstitutional and unlawful acts, and, on the other hand, society's interests in having prosecutors be empowered to make difficult legal decisions free of the concerns that such decisions could subject the prosecutors to civil liability if they turn out to be incorrect. *Id.* at 425-26. Recognizing that even though such a decision might leave some convicted defendants without a remedy for wrongs done to them, the Supreme Court found that various existing checks against abuse of prosecutorial power justified such immunity. *Id.* at 427. Prosecutorial immunity extends to every action by the prosecutor when acting "as an officer of the court" or to those actions "intimately associated with the judicial phase of the criminal process." *Van De Kamp v. Goldstein*, ___ S.Ct. ___, 2009 WL 160430 at * 5-7 (Jan. 26, 2009). It extends to decisions to initiate prosecutions, applications for pre-indictment process (*e.g.* warrant applications), and trial preparation. *Id.* On the other hand, such immunity does not run to "investigative" or "administrative" decisions made by the prosecutor. *See Hartman v. Moore*, 547 U.S. 250, 261-62 & n. 8 (2006).

Here, it is apparent that any decisions made by Defendant Roesink to commence probation revocation proceedings against the Plaintiff in 2006 are charging decisions for which Defendant Roesink enjoys absolute immunity. Moreover, Defendant Roesink issuing a warrant

10

and arranging the extradition of the Plaintiff from Montana to Colorado are the types of actions "intimately associated" with the pending criminal charges such that they, too enjoy absolute immunity. *See e.g. Larsen v. Early*, 842 F.Supp. 1310, 1312-13 (D. Colo. 1994) (prosecutor entitled to absolute immunity for decision to extradite defendant); *Van De Kamp*, *supra* (decision to seek issuance of warrant protected by absolute immunity). Thus, any claim by the Plaintiff related to Defendant Roesink's prosecutorial decisions is subject to dismissal on the grounds of absolute immunity.

Canvassing what remains of the claims against Defendant Roesink, the Court finds nothing that withstands scrutiny. Many of the Plaintiff's "claims" are utterly incomprehensible (*e.g.* claims that her criminal case was "sold" to an investment company and that she was "sold into peonage," the nonsensical "saving to suitors" argument raised in her response brief). Others are patently frivolous (*e.g.* challenges to the sufficiency of judicial oaths; allegations that the Grand County District Attorney is a "for-profit corporation"; the Plaintiff's reference to the doctrine of "silence by acquiescence"). Arguably, there are a handful of allegations that would not be barred by the foregoing principles – most notably, allegations that Defendant Roesink conspired with others to intercept a letter mailed by the Plaintiff, or allegations that Defendant Roesink conspired with Judge Hoak to dismiss an unrelated civil suit brought by the Plaintiff. But these claims suffer from another fatal defect, in that they are entirely conclusory.

A complaint need not contain detailed factual allegations, but it may not get by on merely offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). Simply stating that a party "conspired" with another, without further elaboration, is not enough; a plaintiff must offer

11

"enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 1965. The complaint must offer sufficient facts to raise a reasonable expectation that discovery will reveal evidence of an illegal agreement. *Id.* The Plaintiff's Complaint fails this test. In most circumstances, it appears that the Plaintiff describes a grievance against a particular set of alleged bad actors, and then superficially appends an assertion that Defendant Roesink conspired with them. *See e.g. Docket* # 3 at 24 (Defendant Roesink, the District Attorney in Grand County, allegedly conspired with the staff of the Denver County Clerk's Office to prevent the Plaintiff from filing documents in Denver). Even granting the Plaintiff the liberal construction of her pleadings to which her *pro se* status entitles her, the Court nevertheless finds that the Plaintiff's conclusory allegations of conspiracy against Defendant Roesink fail to state any cognizable claim.[4]

Accordingly, the Court grants Defendant Roesink's Motion to Dismiss, and dismisses all claims asserted against Defendant Roesink on the grounds set forth herein. Although the Court would normally grant a plaintiff leave to attempt to amend claims dismissed for pleading deficiencies (*e.g.* those not implicitly challenging the Plaintiff's convictions or attacking prosecutorial actions by Defendant Roesink), the Court does not reflexively offer such relief in this instance. The Plaintiff's response to Defendant Roesink's motion denies that there are any deficiencies to cure and does not request leave to do so. More importantly, the Court finds that the abundance of incoherent and frivolous allegations in the Plaintiff's Complaint and attached

---

[4]Defendant Roesink raises the argument that she is entitled to qualified immunity. Faced with a claim of qualified immunity, the Plaintiff must first show that the well-pleaded allegations in the Complaint, if taken as true, state a cognizable claim. *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001); *see also Ramirez v. Dept of Corrections,* 222 F.3d 1238, 1244 (10th Cir. 2000).

12

exhibits strongly suggest that the Plaintiff is primarily asserting claims against Defendant Roesink for vexatious purposes and that the claims alleged lack a good faith basis in law and fact. Accordingly, the Court will permit the Plaintiff leave to amend the Complaint to restate claims against Defendant Roesink only upon a separate motion pursuant to Fed. R. Civ. P. 15(a), supported by a proposed Amended Complaint and argument showing that the claims asserted are not frivolous or futile. *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007).

## CONCLUSION

For the foregoing reasons, Defendant Zavaras' Motion to Dismiss **(# 23)** is **DENIED**. Defendant Roesink's Motion to Dismiss **(# 25)** is **GRANTED**, and all claims asserted against Defendant Roesink are **DISMISSED**. The caption of this case is **AMENDED** to omit reference to Defendant Roesink. To the extent that the Plaintiff's filings at Docket # 9 and # 34 are construed as Objections to Magistrate Judge rulings pursuant to Fed. R. Civ. P. 72(a), those Objections are **OVERRULED AS MOOT**, for the reasons set forth herein.

Dated this 5th day of March, 2009

                                             **BY THE COURT:**

                                             */s/ Marcia S. Krieger*

                                             Marcia S. Krieger
                                             United States District Judge