IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-00134-MSK-CBS

PATRICIA LYNN SCHMALTZ,

       Plaintiff,

v.

ARISTEDES ZAVARAS, Executive Director, Colorado Department of Corrections,

       Defendant.

_____

**OPINION AND ORDER GRANTING MOTION TO DISMISS**
_____

       **THIS MATTER** comes before the Court pursuant to the Defendant's Motion to Dismiss **(# 50)**. The Court has not located a specifically-captioned response to that motion by the *pro se* Plaintiff, but has considered the numerous Notices, Declarations, and other documents **(# 55, 59-61, 63-67)** filed by the Plaintiff since the Defendant's motion.

       As the Court previously noted in its March 5, 2009 Order **(# 47)**, the Plaintiff's Complaint **(# 2)** is frequently difficult to meaningfully parse. The Plaintiff sets out her claim against the remaining Defendant in Claim 2 of the Complaint, which alleges violations of the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, along with C.R.S. § 16-11-308(3) and (5). The Plaintiff complains that at some unspecified point in time, she was incarcerated in the Colorado Department of Corrections ("CDOC"). Although she "had only 2 points [on CDOC's inmate security classification scale]," she was assigned to the Brush Correctional Facility, which is "not a minimum level facility." She alleges that this violated

Colorado law, which requires inmates to be placed in the facility most suited to the inmate's rehabilitative needs. She further alleges that this violated the 8th Amendment to the U.S. Constitution, in that she was confined in a medium security facility "making privileges minimal." She further alleges that her confinement violated the Double Jeopardy clause of the U.S. Constitution, in that her "alleged debt has already been repaid by virtue of creating and selling liens."[1] She also asserts that Defendant Zavaras violated the Fourth Amendment to the U.S. Constitution and committed grand larceny by "taking Plaintiff's monthly Social Security Annuity payments from January 2007 through the present."

The Defendant moves **(# 50)** to dismiss the claims against him arguing: (i) any claims asserted against him in his official capacity are barred by the 11th Amendment; (ii) the Plaintiff fails to allege the Defendant's personal participation in any deprivation; (iii) the Plaintiff fails to state a cognizable constitutional claim under 42 U.S.C. § 1983, in that she has no constitutional right to be housed in a specific prison facility and her detention in a medium security facility did not present atypical and significant hardships; (vi) that she states no cognizable claim that she has been exposed to Double Jeopardy;(vii) the Defendant is entitled to qualified immunity with regard to any claims that are sufficiently pled against him; and (viii) C.R.S. § 16-11-308 provides no private right of action.

The Plaintiff did not file anything that could be definitively identified as a response to the motion. She has filed documents entitled, for example, "Denial of Motions and Notice to Settle

---

[1] As best the Court can determine, the Plaintiff's conviction was for "hampering governmental operations" and "offering a false instrument for recording." These acts, in turn, apparently relate to a dispute the Plaintiff had with lienholders attempting to foreclose on her home.

Accounts" **(# 55)**, but such documents make no reference whatsoever to the Defendant or the arguments raised in the motion to dismiss.

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Two recent decisions from the Supreme Court have clarified the analysis that the Court undertakes when reviewing a pleading under Rule 12(b)(6) standards. First, although "detailed factual allegations" are not required, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must have sufficient factual assertions "to raise a right to relief above the speculative level." *Id.* Second, because a court is "not bound to accept as true a legal conclusion couched as a factual allegation," it must first identify and disregard averments that "are no more than conclusions [which] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A court then examines the remaining, well-pled factual allegations, assuming their veracity, and determine whether they plausibly give rise to an entitlement to relief. *Id.*

As always, the Court construes the Plaintiff's *pro se* pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in the Plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve the Plaintiff of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

The Court finds merit in several of the Defendant's arguments. First, the Court notes that the Complaint fails to state a cognizable constitutional violation with regard to any of the matters raised by the Plaintiff. The Court first considers whether the Plaintiff can assert a substantive or procedural Due Process claim arising out of her placement in a medium-security facility rather than a minimum-security one.

The Fifth Amendment to the United States Constitution guarantees that individuals will not be deprived of liberty or property without Due Process. In order for a Due Process claim to arise, the Plaintiff must have a constitutionally-recognized liberty or property interest in the thing of which she was allegedly deprived. The Supreme Court has recognized that, except in circumstances discussed below, the U.S. Constitution does not recognize an inmate's right to be placed in a particular prison facility desired by the inmate. *See e.g. Meacham v. Fano*, 427 U.S. 215, 216 (1976); *see also Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). Thus, the U.S. Constitution does not create an enforceable liberty or property interest giving rise to a Due

Process claim by the Plaintiff.

There is one situation in which an inmate has a constitutional right to Due Process prior to being assigned to a prison - where that assignment will result in the inmate being subjected to "atypical and significant hardships . . . in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 485 (1995). For example, the Supreme Court has recognized such atypical and significant hardships when a prisoner is subject to extreme, "Supermax"-type restrictions, such as 23-hour per day lockdown, inhibition of communication with other inmates, solitary dining, and only indoor recreation. *See e.g. Wilkinson v. Austin*, 545 U.S. 209, 214 (2005). Here, the Plaintiff's allegations regarding the circumstances of her confinement in the Brush Correctional Facility are simply conclusory statements that her "privileges [were] minimal."[2] This purely conclusory assertion is insufficient to adequately plead facts demonstrating a right to relief. *Twombly,* 550 U.S. at 555; *Iqbal*, 129 S.Ct. at 1950. Moreover, the 10th Circuit has previously affirmed the *sua sponte* dismissal of claims by an inmate claiming to have been mistakenly assigned to a medium-security facility, based on findings that such contentions failed to allege sufficiently atypical conditions. *See Bey v. Simmons*, 69 Fed.Appx. 931, 932-33 (10th Cir. 2003) (unpublished). Under these circumstances, the Court finds that the Plaintiff has failed to allege the existence of a liberty or property interest protected by the U.S. Constitution in her prison housing assignment.

Liberty and property interests can also be created by state law. However, the Plaintiff

---

[2] In another portion of the Complaint, the Plaintiff alleges that, as a result of her assignment to a medium-security facility, she was subjected to "23-hour lockdown initially, and, subsequently, by being exposed to violent offenders." The Court finds that an initial period of 23-hour lockdown, followed by release into the general prison population is not sufficient, of itself, to constitute an atypical and significant hardship.

does not adequately allege that Colorado law confers on her a legally-protected right to be assigned to a given facility. C.R.S. § 16-11-308(3), on which she relies, provides that CDOC staff shall make a recommendation as to the place of confinement "which may result in the maximum rehabilitation of the offender," but says nothing that confers upon the inmate an actual right to be assigned to any particular facility. Indeed, the Plaintiff herself cites subsection (5) of that statute, which makes it clear that CDOC staff is "authorized to transfer said person to any state institution or treatment facility . . . if [it] deems it to be in the best interests of said person and the public." Far from conferring an entitlement upon an inmate to be housed in a particular facility (or at a particular security classification level), this statute makes it clear that CDOC officials possess the discretion to assign inmates to facilities as they see fit. Accordingly, the Court finds nothing in the Complaint that states a cognizable substantive or procedural Due Process claim.

Arguably, the Plaintiff's Complaint is susceptible to a reading that she also raises a claim that the conditions of her confinement were "cruel and unusual." To allege an Eighth Amendment violation, the Plaintiff must state facts showing that she was subjected to punishment involving "the unnecessary and wanton infliction of pain" or punishment that is "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Plaintiff asserts that her assignment to a medium-security facility exposed her to the "violent offenders who were murderers, drug users, etc." and "made her subject to physical violence, intimidation and mental stress," but does not assert that she was indeed the victim of physical violence or intimidation, nor does she allege facts from which the Court could conclude that she was subjected to a "grossly disproportionate" punishment for her crime. Thus, the Court

finds that, to the extent the Plaintiff intends to assert an Eighth Amendment claim, she has failed to state sufficient facts to support such a claim.

The Court further finds that, on its face, the Plaintiff's assertion that she was subjected to Double Jeopardy is frivolous. She appears to contend that she could not be subjected to incarceration as a result of her guilty plea to crimes of hampering governmental administration and tendering a false document for filing because she had been the subject of civil foreclosure proceedings involving her home. The inability of such an assertion to support a Double Jeopardy claim is self-evident and requires no further analysis by the Court.

Finally, the Court observes that the Plaintiff alleges that the Defendant violated her Fourth Amendment rights by taking her Social Security Annuity payments. The Court finds that this allegation is purely conclusory. The assertion that the Defendant "took" her Social Security payments is little more than the formulaic assertion of the elements of a Fourth Amendment claim. The Plaintiff does not identify the manner and means by which this "taking" occurred – whether, for example, the Defendant notified Social Security officials of her incarceration, thus resulting in the suspension of her benefits under 42 U.S.C. § 402(x); whether the Defendant diverted benefit checks mailed to the Plaintiff into an inmate trust account during the Plaintiff's incarceration, or whether the Defendant engaged in an old-fashioned mugging of the Plaintiff. The distinction is significant, as there are plausible ways in which the Defendant might indeed have "taken" the Plaintiff's Social Security payments in ways that are legally privileged or otherwise insufficient to warrant § 1983 relief. Without the assertion of specific facts demonstrating the circumstances under which the Defendant allegedly "took" the Plaintiff's benefits, the Court is unable to assess whether the Plaintiff can state a cognizable claim in this

respect. Accordingly, because the Complaint pleads only the conclusory assertion that the Defendant "took" her benefits, the Plaintiff's pleading is insufficient. *See e.g. Iqbal*, 129 S.Ct. at 1249-50.

Thus, the Court finds that the Plaintiff has failed to state any cognizable claim for relief under 42 U.S.C. § 1983. For this reason alone, her Complaint is subject to dismissal.

In addition, the Court observes that, in most respects, the Plaintiff fails to allege that the Defendant personally participated in the constitutional deprivations she alleges. The law is clear that liability under § 1983 must be based on the defendant's personal participation in the alleged constitutional violation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). The Plaintiff does not allege, for example, that the Defendant was the individual who personally made the decision to assign her to a medium-security facility despite her security classification score, nor does the Plaintiff allege facts sufficient to demonstrate that the Defendant even knew such an assignment had occurred. Rather, the Plaintiff appears to name the Defendant as a party to this action simply because he is the top official at CDOC, but § 1983 liability cannot be asserted against an official simply because he has supervisory or oversight powers over the subordinate who are actually responsible for the deprivation. *Id.* Accordingly, even if the Plaintiff could assert cognizable claims against the Defendant, those claims would be subject to dismissal based on the Plaintiff's failure to adequately allege the Defendant's personal participation.

Accordingly, the Defendant's Motion to Dismiss **(# 50)** is **GRANTED**, and all claims asserted against the Defendant are **DISMISSED**. There being no remaining Defendants or claims in this action, the Clerk of the Court is directed to close this case.

Dated this 7th day of February, 2010

                                       **BY THE COURT:**

*[signature: Marcia S. Krieger]*

                                       Marcia S. Krieger
                                       United States District Judge